IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINWOOD WILKERSON, :
:
    Plaintiff, : CIVIL NO. 4:07-CV-2228
:
v. : (Judge McClure)
:
UNITED STATES OF AMERICA, :
:
    Defendant. :

# **MEMORANDUM**

April 9, 2010

## I.    **Introduction**

Plaintiff Linwood Wilkerson ("Plaintiff" or "Wilkerson"), an inmate presently confined at the Allenwood Low Security Correctional Institution ("FCI Allenwood Low") in White Deer, Pennsylvania, commenced the above action *pro se* by filing a Complaint raising claims under the Federal Tort Claims Act ("FTCA"). In his Complaint, filed on December 7, 2007, Wilkerson alleges that on September 19, 2006, he "slipped and fell on a puddle of a water-like substance that covered a portion of the cafeteria floor in the chow-line access area" at FCI Allenwood. (Rec. Doc. No. 1, First Count, ¶ 3.)

Presently before the Court is a motion for summary judgment filed on behalf of Defendant the United States of America. (Rec. Doc. No. 30.) For the reasons set

forth below, the motion will be granted.

**II.     Procedural History**

Service of Wilkerson's Complaint was directed by Order dated January 23, 2008. (Rec. Doc. No. 9.) On April 3, 2008, Defendant filed an Answer to the Complaint raising affirmative defenses. (Rec. Doc. No. 16.) In a scheduling Order dated November 12, 2008, the parties were directed to complete discovery within sixty (60) days, and the deadline for the submission of dispositive motions was set for forty-five (45) days after the close of discovery. (Rec. Doc. No. 24.)

On January 20, 2009, Wilkerson filed a motion in which he requested that this Court direct that he be provided with an independent medical examination, including a Magnetic Resonance Imaging ("MRI") test, at Defendant's expense. (Rec. Doc. No. 25.) He also filed a motion to appoint counsel. (Rec. Doc. No. 26.) Defendant filed opposition to Wilkerson's motions on February 4, 2009. (Rec. Doc. Nos. 28-29.) By Order dated April 20, 2009, Wilkerson's motions were denied. (Rec. Doc. No. 33.)

On March 13, 2009, Defendant filed the instant motion for summary judgment. (Rec. Doc. No. 30.) Defendant thereafter filed a supporting brief (Rec. Doc. No. 31), statement of facts (Rec. Doc. No. 32), and a supporting exhibit (Rec. Doc. No. 31-2). At the time of the Court's April 20, 2009 Order disposing of his motions for

independent medical examination and to appoint counsel, Wilkerson had not yet filed any opposition to the instant motion. Therefore, in the April 20 Order, he was directed to file his opposition, including an opposing brief and statement of material facts as required by M.D. Pa. L R 56.1, within fifteen (15) days. (*See* Rec. Doc. No. 33.) On May 4, 2009, Wilkerson timely filed his opposition, including an opposing brief (Rec. Doc. No. 34), statement of facts in response to Defendant's statement, along with supporting exhibits (Rec. Doc. No. 36), and an objection (Rec. Doc. No. 35) to the instant motion on the basis that it was untimely filed. On May 15, 2009, Defendant filed a reply brief. (Rec. Doc. No. 37.) Accordingly, the instant motion is fully briefed and ripe for disposition.

### III. Factual Background

Wilkerson does not dispute Defendant's three (3) paragraph statement of material facts ("SMF"), which state as follows:

Wilkerson states in his response to Defendant's first set of interrogatories (Rec. Doc. No. 31-2) that the basis for his belief that a prison staff member had actual knowledge that there was a water-like substance on the floor at the time of his fall is that an unsafe condition existed on a daily basis since a water-like substance regularly accumulated on the chow hall floor. (Rec. Doc. No. 32, Dft.'s SMF, ¶ 1; Rec. Doc.

No. 36, Pltf.'s SMF, ¶ 4.) Wilkerson further states that this accumulation of a water-like substance was occasioned on a daily basis by the proximity of the chow hall food line in relation to the tray distribution area. (Rec. Doc. No. 32 ¶ 2; Rec. Doc. No. 36 ¶ 5.) In addition, Wilkerson states that wet and dripping trays were regularly transported from the dishwashing area to the tray distribution location and the floor became wet and slippery as this occurred. (Rec. Doc. No. 32 ¶ 3; Rec. Doc. No. 36 ¶ 6.)

In his response to Defendant's statement of facts, Wilkerson submits the memorandum of Cook Supervisor J. Hodish, a Federal Bureau of Prisons ("BOP") employee to support his statements that, on September 19, 2006, Hodish heard someone yell from the dorm side of the dining room, he turned to see inmate Wilkerson pulling himself off the dining room floor, and as he walked over toward him, he noticed that someone had spilled water on the floor. (Rec. Doc. No. 36, Pltf.'s SMF, ¶ 1; Rec. Doc. No. 36 at 6, Hodish Memo.)

Wilkerson also submits the affidavit of fellow inmate Juan Fermin, in which Fermin states that he witnessed Wilkerson fall on the dining room floor on September 19, 2006, and also witnessed BOP personnel hurry to his side to provide him with assistance. (Rec. Doc. No. 36, Pltf.'s SMF, ¶ 2; Rec. Doc. No. 37 at 7-8, Fermin Aff.)

Finally, Wilkerson submits his own affidavit to support his statements that, as an incarcerated prisoner, his freedom of choice and movement is extremely limited, he must eat in the prison cafeteria, meals are eaten in a rush, and there is insufficient time to inspect for hazardous conditions. (Doc. 36, Pltf.'s SMF., ¶ 7; Doc. 36 at 9 ¶ 3, Wilkerson Aff.) Wilkerson also cites to his affidavit to support his statement that, prior to his slip and fall, he observed a Corrections Officer stationed in the area of the incident who should have observed the accumulated water on the floor and taken appropriate steps to warn him of this potential hazard. (Doc. 36, Pltf.'s SMF, ¶ 8; Doc. 36 at 10 ¶ 5.) Finally, Wilkerson cites his affidavit to support his statements that, on at least one occasion prior to his fall, he witnessed a fellow inmate slip and fall in the cafeteria while entering the chow line at FCI Allenwood, that BOP staff were aware that the floors often were wet in the area where he fell, and that BOP staff frequently placed "wet floor" signs in this area. (Rec. Doc. No. 36, Pltf.'s SMF, ¶ 3; Rec. Doc. No. 36 at 10 ¶¶ 6-8.)

**IV. Standard of Review**

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

5

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. *Id.*; *Justofin v. Metropolitan Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004).

Regardless of who bears the burden of persuasion at trial, the party moving for summary judgment has the burden to show an absence of genuine issues of material fact. *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). To meet this burden when the moving party does not bear the burden of persuasion at trial, the moving party must show that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" *Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3d Cir. 1989) (quoting *Chippollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d. Cir. 1987)); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). More simply put, a party moving for summary judgment who does not bear the burden of persuasion at trial is not required to negate the nonmovant's claim, but only point out a lack of evidence sufficient to support the nonmovant's claim. *Country Floors, Inc. v.*

6

*Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1061 (3d Cir. 1991).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that a issue of material fact remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party, however, cannot do so by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact. *Celotex,* 477 U.S. at 323; *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252 (3d Cir. 1999).

**V. Discussion**

    **A. Exhaustion of Administrative Remedies**

The FTCA, 28 U.S.C. § 2671 *et seq.*, is a statutory waiver of sovereign immunity for tort claims. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). The FTCA allows the government to be sued "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, as the FTCA is an express waiver of sovereign immunity, strict compliance with its provisions is required. *Livera v. First Nat'l Bank*, 879 F.2d 1186, 1194 (3d Cir. 1989). As a prerequisite to a suit under the FTCA, a claim first must be presented to, and denied by, the federal agency.

7

The FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

Defendant admits that Wilkerson exhausted his administrative remedies with respect to his claims asserted under the FTCA. (*See* Rec. Doc. No. 16 at 2 § III.) The record shows that, on January 24, 2007, Wilkerson filed an administrative tort claim with the BOP Northeast Regional Office in which he sought compensatory damages in the amount of $900,000 based on his claim that when he fell at FCI Allenwood on September 19, 2006, he injured his back. (*See* Rec. Doc. No. 1 at 5, 7/11/07 Response to Tort Claim.) The record further shows that, on July 11, 2007, BOP Regional Counsel Henry J. Sadowski issued the following response to Wilkerson's claim:

> After careful review of this claim, I have decided not to offer a settlement. Investigation reveals that [on] September 19, 2006, you reported to staff that you fell on a puddle of water. You claim your back was injured as a result of the fall and that you have continued pain. Investigation further reveals that staff immediately placed a wet floor sign in the area and had another inmate mop the area. You were evaluated by medical services and received regular follow up treatments to address your complaints. An x-ray of your back was taken on September 20, 2006, with negative results for fracture. There is no evidence to suggest you experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons' employee.

8

Accordingly, your claim is denied.

(*Id*.) Based on the foregoing, Wilkerson successfully exhausted his administrative remedies with respect to his claims asserted under the FTCA in his Complaint.

**B.     Analysis**

Preliminarily, the Court addresses Wilkerson's objection to the instant motion on the basis that it was untimely filed. (*See* Rec. Doc. No. 35.) Pursuant to this Court's November 12, 2008 scheduling Order, which set the deadline for the completion of discovery at sixty (60) days from the date of the Order, or January 12, 2009, and the deadline for the submission of dispositive motions at forty-five (45) days from the close of discovery, dispositive motions were due to be filed on or before February 26, 2009. (*See* Rec. Doc. No. 24.) Therefore, the instant motion, filed on March 13, 2009, was not timely filed. In its reply brief, Defendant concedes that its motion was untimely filed as a result of an error in calculating the dispositive motion deadline, but submits that judicial economy would best be served if we accept the motion as timely filed in order to dispose of the case without the expense of trial. (*See* Rec. Doc. No. 37 at 2 n.1.) The Court agrees, and therefore, we overrule Wilkerson's objection. Accordingly, we turn to an analysis of the instant motion.

The FTCA confers subject matter jurisdiction on district courts over negligence

actions against the United States. It provides, in relevant part, as follows:

> . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). It is well-settled that, in considering a FTCA action, a federal district court must apply the law of the state in which the alleged tortious conduct occurred. *Id.*; *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987). To establish a cause of action for negligence in Pennsylvania, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *Northwest Mutual Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005); *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

"The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (citing *Davies v. McDowell Nat'l Bank*, 180 A.2d 21 (Pa. 1962); Restatement (Second) of Torts §§ 328-343B (1965)). "Pennsylvania courts have found that 'an inmate's status is most closely to that of an

10

invitee under common law.'" *Yudenko v. Guarini*, Civil No. 06-4161, 2008 WL 4055826 *11 n.8 (E.D. Pa. 2008) (quoting *Graf v. County of Northhampton*, 654 A.2d 131, 133-34 (Pa. Commw. 1995)). "Possessors of land owe a duty to protect invitees from foreseeable harm." *Carrender*, 469 A.2d at 123 (citing Restatement, *supra*, §§ 341A, 343, 343A). The *Carrender* Court further stated as follows:

> With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he:
>
> '(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitee, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.'

*Id.* (quoting Restatement, *supra*, § 343). If "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence and judgment," then under Pennsylvania law, there is no liability. *Id.* However, "'the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by the invitee.'" *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 414 A.2d 100, 104 (1980) (quoting *Palenscar v. Michael J. Bobb, Inc.,* 266 A.2d 478,

11

480 (Pa. 1970)).

In the instant case, the record establishes that, on September 19, 2006, Defendant was unaware of the water on the floor, but as soon as the condition was made known, Food Services staff immediately placed a "wet floor" sign in the area and had the area mopped by the inmates working in that area of Food Services. (*See* Rec. Doc. No. 36 at 6, Hodish Memo.) Although Wilkerson argues that Defendant should be held liable because BOP staff allegedly knew of the dangerous condition on that date and failed to warn him about it, he has not provided any evidence to support his argument. *See Myers v. Penn Traffic Co.,* 606 A.2d 926, 928 (Pa. Super. Ct. 1992) (quoting *Moultrey v. Great Atlantic & Pacific Tea Co.,* 422 A.2d 593, 596 (Pa. Super. Ct. 1980) ("the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence.") Rather, the undisputed evidence establishes that Wilkerson was well aware of the fact that, on a daily basis, water accumulated on the floor in the particular area of the dining room floor where he fell on September 19, 2006. (*See* Rec. Doc. No. 32, Dft.'s SMF, ¶¶ 1-3; Rec. Doc. No. 36, Pltf.'s SMF, ¶¶ 3-6.) Therefore, Defendant cannot be held liable under Pennsylvania law for any injuries Wilkerson sustained as a result of his fall,

*see Carrender*, 469 A.2d at 123 (quoting Restatement, *supra*, § 343), and Defendant is entitled to judgment as a matter of law.

**VI.   Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (Rec. Doc. No. 30) will be granted.  An appropriate Order will enter.

    s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINWOOD WILKERSON, :
 :
    Plaintiff, : CIVIL NO. 4:07-CV-2228
 :
v. : (Judge McClure)
 :
UNITED STATES OF AMERICA, :
 :
    Defendant. :

## **ORDER**

April 9, 2010

In accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendant's motion for summary judgment (Rec. Doc. No. 30) is **GRANTED**.

2. The Clerk of Court is directed to enter **JUDGMENT** in favor of Defendant.

3. The Clerk of Court shall **CLOSE** this case.

                                          s/ James F. McClure, Jr.
                                          JAMES F. McCLURE, JR.
                                          United States District Judge